UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| PHOENIX ENERGY MARKETING, INC., d/b/a B/R ENERGY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 16-CV-0681-CVE-TLW |
| CHASE OIL CORPORATION, MACK ENERGY CORPORATION, and MACK C. CHASE, | ) ) ) ) ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Now before the Court are defendant Mack C. Chase's (Chase) motion to dismiss (Dkt. # 13), defendant Chase Oil Corporation's (Chase Oil) motion to dismiss (Dkt. # 14), and defendant Mack Energy Corporation's (Mack Energy) motion to dismiss (Dkt. # 15). The defendants argue that the claims against them should be dismissed for lack of personal jurisdiction and, in the alternative, ask the Court to dismiss this case due to a similar suit pending in New Mexico state court. Chase also argues that the claims against him should be dismissed for failure to state a claim. Dkt. # 13, at 14. Plaintiff argues that the issue of personal jurisdiction was already decided before the case was removed to this Court and, even if the Court considers the issue, it has specific personal jurisdiction over the defendants in this case. Moreover, plaintiff asserts that it has sufficiently stated a claim against Chase and that the Court should not dismiss this case in favor of the New Mexico suit because the claims in this suit that are independent of the issues being litigated in New Mexico. Dkt. ## 20, 21, 22.

## I. Background

Plaintiff is an Oklahoma corporation owned and controlled by Brian Broaddus. Dkt. # 21-1, at 1. In 1996, Broaddus was the president of B/R Energy Partners, Inc., which entered into a letter agreement with Chase Oil (Letter Agreement), under which B/R Energy Partners, Inc. agreed to purchase and market gas produced by Chase Oil from certain wells in northwest New Mexico. Dkt. # 21-2. B/R Energy Partners, Inc. and Chase Oil entered into a more formal agreement in 1997 (1997 Agreement), which was replaced by a third agreement in 1998 that altered the amount charged for certain services (1998 Agreement). Dkt. ## 21-3, 21-4. Under the 1997 and 1998 Agreements, B/R Energy Partners, Inc. agreed to make disbursements on Chase Oil's behalf for all known burdens, such as royalty interests and state and federal taxes, based on information provided by the well operators. Dkt. # 21-4, at 12. Chase Oil agreed to pay B/R Energy Partners, Inc. a monthly fee for accounting services associated with revenue disbursement, and B/R Energy Partners, Inc. agreed to provide records of disbursements to Chase Oil on a quarterly basis. Id. The 1998 Agreement was for an initial term of one year, and afterward would continue on a month-to-month basis. Id. at 8. The agreement could be terminated by either party after the initial term with thirty days written notice. Id.

At the time of the agreements, B/R Energy Partners, Inc. was a Texas corporation with its principal place of business in Tulsa, Oklahoma. Dkt. # 21-1, at 1-2. On November 23, 1998, B/R Energy Partners, Inc. terminated its corporate existence. Two days later, Phoenix Energy Consulting Services, Inc. was incorporated in Oklahoma. Dkt. # 21-6. In 2001, Phoenix Energy Consulting Services, Inc. became Phoenix Energy Marketing, Inc., the plaintiff in this case. Dkt. # 21-1, at 1; Dkt. # 21-8. Plaintiff asserts that it is the lawful corporate successor to B/R Energy Partners, Inc.

Dkt. # 21-1, at 2. Plaintiff has registered the trade name B/R Energy, and it or its predecessor has done business under that name since 1999. Id.; Dkt. ## 21-7, 21-9. Plaintiff asserts that its principal place of business, and the principal place of business of its predecessors, has always been Tulsa, Oklahoma. Dkt. # 21-1, at 2. Plaintiff also asserts that nearly all business conducted between plaintiff and defendants during their business relationship was handled, on plaintiff's end, from its office in Tulsa. Id. Moreover, the Letter Agreement was printed on B/R Energy Partners, Inc. letterhead, which features a picture of an oil rig superimposed on an outline of the state of Oklahoma and identifies offices in Tulsa, Oklahoma and Englewood, Colorado. Dkt. # 21-2. The 1997 and 1998 Agreements both direct all telephone, facsimile, and written notices to be sent to B/R Energy Partners, Inc.'s Tulsa office. Dkt. # 21-3, at 8; Dkt. # 21-4, at 8.

Plaintiff and its predecessor corporations continued conducting business with Chase Oil[1] as B/R Energy until plaintiff terminated the 1998 Agreement on November 1, 2015. Dkt. # 14-1, at 6. Throughout this time, Broaddus remained in charge of the corporations conducting business as B/R Energy. Id. at 5; Dkt. # 21-1, at 1. In 2013 or 2014, the United States Department of Interior, Office of Natural Resource Revenue (ONRR) contacted Chase Oil because it was conducting an audit to determine whether Chase Oil had underpaid its federal royalties. Dkt. # 2-1, at 7; Dkt. # 14-1, at 7. Chase Oil requested information from plaintiff to provide to ONRR for the audit. Dkt. # 2, at 7; Dkt. # 14-1, at 9. Defendants assert that plaintiff refused to provide the information, claiming that it was

---

[1] Plaintiff asserts that although it entered into the agreements with Chase Oil, plaintiff primarily dealt with employees of Mack Energy after the agreements were signed. Dkt. # 2-1, at 3. Plaintiff asserts that it believes the two corporations are related and that many of the individuals with whom plaintiff conducted business identified themselves as employees of "Mack Energy/Chase Oil." Id. at 4-6. To avoid confusion, the Court will refer to the corporation performing under the contract as Chase Oil throughout this section and will specifically address the role of Mack Energy below.

proprietary. Dkt. # 14, at 9. Plaintiff asserts that the request to provide information for the audit was not covered by the 1998 Agreement and instead constituted a separate oral agreement that it calls the "Mack Agreement." On November 1, 2015, plaintiff terminated the 1998 Agreement. Dtk. # 14-1, at 6.

On November 30, 2015, Chase Oil filed a suit against plaintiff, Broaddus, the B/R Energy Group, Inc., and B/R Energy Inc. (New Mexico defendants) in the District Court of Eddy County, State of New Mexico (New Mexico suit). After Chase Oil filed the New Mexico suit, plaintiff presented Chase Oil with an invoice for $56,000 for data mining work performed by plaintiff to gather information for the ONRR audit as requested by Chase Oil. Dkt. # 2-1, at 8; Dkt. #14, at 9 n.2. Plaintiff asserts that the data mining work was performed pursuant to the oral Mack Agreement. On May 21, 2016, Chase Oil filed an amended complaint in the New Mexico suit, asserting breach of the duty of good faith and fair dealing and requesting indemnity and an accounting. Dkt. # 14-1. On July 13, 2016, the New Mexico defendants filed an answer and counterclaim alleging breach of contract for disclosure of proprietary information and requesting indemnity. Dkt. # 14-2.

On September 9, 2016, plaintiff filed this case in the District Court of Tulsa County, State of Oklahoma, alleging breach of contract and unjust enrichment arising from Chase Oil's failure to pay the data mining invoice and breach of contract for disclosure of proprietary information. Dkt. # 2-4. Plaintiff filed an amended petition on September 16, 2016. Dkt. # 2-1. On October 5, 2016, Chase Oil and Mack Energy filed motions to dismiss for lack of personal jurisdiction. Dkt. ## 2-7, 2-8. The summons was issued for the amended petition on October 21, 2016. Dkt. # 2-14, at 5. On November 7, 2016, the state court denied Chase Oil's and Mack Energy's motions to dismiss the original petition without explanation. Dkt. # 2-13. On November 11, 2016, Chase removed the case

4

to this Court. Dkt. # 2. Defendants now move to dismiss for lack of personal jurisdiction, or, alternatively, under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976), due to the prior filed New Mexico suit. Dkt. ## 13, 14, 15.

## II. Personal Jurisdiction

Defendants argue that this Court does not have personal jurisdiction over them as to plaintiff's claims. Plaintiff argues that the issue of personal jurisdiction was already decided before the case was removed to this Court and, even if the Court considers the issue, it has jurisdiction over the defendants in this case. The Court will first consider the effect of the state court's November 7, 2016 order denying Chase Oil's and Mack Energy's motions to dismiss the original petition.

### A. Effect of the State Court Order

When a case is removed from a state court to a federal court, all orders entered prior to removal "shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450. Federal courts have interpreted § 1450 to mean that "[a]fter removal, interlocutory orders of the state court are transformed into orders of the court to which the case is removed." In re Diet Drugs, 282 F.3d 220, 231-32 (3d Cir. 2002); see also Resolution Trust Corp. v. Northpark Joint Venture, 958 F.2d 1313, 1316 (5th Cir. 1992) ("A prior state court order in essence is federalized when the action is removed to federal court."); Preseau v. Prudential Ins. Co. of Am., 591 F.2d 74, 79 (9th Cir. 1979) ("[T]he federal court . . . treats everything that occurred in the state court as if it had taken place in federal court.") (internal quotation marks omitted). "Thus, a federal court is free to reconsider a state court order and to treat the order as it would any interlocutory order it might itself have entered." Brown v. K-MAC Enter., 897 F. Supp. 2d 1098, 1103 (N.D. Okla.

2012) (quoting <u>Laney ex rel. Laney v. Schneider Nat'l Carriers, Inc.</u>, 259 F.R.D. 562, 564 (N.D. Okla. 2009)); cf. <u>Jenkins v. MTGLQ Inv'rs</u>, 218 F. App'x 719, 724 (10th Cir. 2007)[2] (finding that the district court could set aside a default judgment entered in state court after suit was removed).

Therefore, even if the state court had denied the same motions that defendants now bring, the Court could treat defendants' motions to dismiss for lack of personal jurisdiction as motions to reconsider under Rule 54(b). However, the Court need not reconsider the state court's order, because the state court did not rule on any of the motions now before the Court. First, Chase did not file a motion to dismiss in the state court, so his personal jurisdiction argument could not have decided by that court. Second, the motions to dismiss of Chase Oil and Mack Energy filed in the state court were motions to dismiss plaintiff's original petition. Chase Oil and Mack Energy were not served with the amended petition until weeks after their motions to dismiss were filed. Because plaintiff had filed an amended petition, the motions to dismiss the original petition were moot when the state court entered its order. Cf. <u>Edwards v. Andrews, Davis, Legg, Bixler, Milsten & Murrah, Inc.</u>, 650 P.2d 857, 859 (Okla. 1982) (noting that an amended petition is an abandonment of the original pleading). Thus, the state court order has no effect on defendants' current motions, and the Court will consider defendants' arguments that the Court lacks personal jurisdiction over them in this case.

### B. Legal Framework for Personal Jurisdiction

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendant. <u>OMI Holdings, Inc. v. Royal Ins. Co. of Canada</u>, 149 F.3d 1086, 1091 (10th Cir. 1998).

---

[2] This and all other unpublished opinions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. 32.1.

"When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. Id.

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See Okla. Stat. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. Id. "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)). Alternately, a court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

Plaintiff asserts that Chase Oil and Mack Energy have sufficient contact with Oklahoma for the Court to assert personal jurisdiction over them in this case and that the Court has jurisdiction over Chase due to Mack Energy's contacts with Oklahoma. It is unclear from plaintiff's arguments whether it is arguing that the Court has both general and specific jurisdiction over Chase Oil and Mack Energy, or only specific jurisdiction. As for Chase, plaintiff argues that the Court has jurisdiction over him only through Mack Energy's contacts with Oklahoma, and plaintiff does not present any evidence that Chase has any contacts with Oklahoma. Plaintiff does not assert or provide any evidence to support finding that the Court has general jurisdiction over Chase, and, as discussed

8

below, the Court finds that it has specific jurisdiction over Chase Oil and Mack Energy. Thus, the Court need not address general jurisdiction.

Specific jurisdiction requires a two-step analysis. First, courts "must consider whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Benton v. Cameco Corp., 375 F.3d 1070, 1075 (10th Cir. 2004) (quoting World-Wide Volkswagen, 444 U.S. at 297). To do so, courts "determine whether the defendant has sufficient minimum contacts with the forum." Zenergy, Inc. v. Coleman, No. 09-CV-0381-CVE-FHM, 2009 WL 3571314, at *5 (N.D. Okla. Oct. 26, 2009) (citing OMI Holdings, 149 F.3d at 1091). If such minimum contacts exist, then courts must "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" Benton, 375 F.3d at 1075 (quoting OMI Holdings, 149 F.3d at 1091).

### C. Minimum Contacts

For a court to exercise specific jurisdiction over a defendant, that defendant must have such minimum contacts with the forum state that it has "'purposefully avail[ed] itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." Burger King, 471 U.S. at 475 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). "Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, and whether the plaintiff's claim arises out of or results from 'actions by the defendant himself that create a substantial connection with the forum state.'" OMI Holdings, 149 F.3d at 1091 (citing Burger King, 471 U.S. at 472; Asahi Metal Indus. Co. v. Sup. Ct. of Cal., 480 U.S. 102, 109 (1987)). Contacts exist "where the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations" between himself and residents of the forum.'"

9

Id. at 475-76 (citations omitted). Additionally, for a defendant's contacts with the forum state to serve as the basis for personal jurisdiction, the plaintiff's claims must arise out those contacts. See OMI Holdings, 149 F.3d at 1095 (citing Asahi, 480 U.S. at 109).

### i. Chase Oil

Chase Oil argues that it does not have minimum contacts with Oklahoma sufficient to establish personal jurisdiction. Chase Oil emphasizes that when it signed the agreements, B/R Energy Partners, Inc. was incorporated in Texas. But plaintiff has presented evidence that it and its predecessor corporations have always been headquartered in Oklahoma. The Letter Agreement is on B/R Energy Partners, Inc. letterhead, which clearly features an outline of the state of Oklahoma and identifies offices in Oklahoma and Colorado. The 1997 and 1998 Agreements identify an address in Tulsa, Oklahoma as the designated address for any notice required under the agreements, and throughout the business relationship, plaintiff's side of the relationship was conducted almost entirely from Oklahoma. Because a corporation is also a resident of the state of its principal place of business, Chase Oil entered into a series of agreements with a resident of Oklahoma.

"A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum." Benton, 375 F.3d at 1077 (citing Burger King, 471 U.S. at 473). However, if the contract creates continuing relationships and obligations, it may be sufficient to establish minimum contacts. Id. Defendant has presented evidence that Chase Oil entered into a series of contracts with plaintiff that established a business relationship that continued from 1996 to 2015. Plaintiff alleges that employees of plaintiff and Chase Oil were in contact "on a nearly daily basis" via email and/or telephone. Dkt. # 21, at 16. By signing a contract with an Oklahoma resident corporation that established a long standing relationship

10

maintained by continuous phone calls and emails to and from employees in Oklahoma, Chase Oil has minimum contacts with Oklahoma.

For minimum contacts to give rise to specific personal jurisdiction, there must be a nexus between Chase Oil's forum-related contacts and plaintiff's cause of action. See OMI Holdings, 149 F.3d at 1095. Plaintiff alleges that Craig Dunn, an employee of Chase Oil and/or Mack Energy, breached the 1998 Agreement by disclosing proprietary information to the ONRR. Dkt. # 2-1, at 9-11. Chase Oil's contacts with Oklahoma relate to its contractual relationship with plaintiff, and clearly there is a nexus between the contractual relationship and Chase Oil's alleged breach of that contract. Plaintiff also alleges that, when Chase Oil and/or Mack Energy asked plaintiff to send them the information needed for the ONRR audit, the parties entered into an oral agreement independent of the prior contractual relationship, which plaintiff has called the "Mack Agreement." Plaintiff asserts claims for breach of contract and unjust enrichment arising out of defendants' refusal to pay plaintiff's invoice for the work done collecting the requested data. Although plaintiff argues there is a separate Mack Agreement, these claims also arise from the contractual relationship between plaintiff and Chase Oil. Under the 1998 Agreement, plaintiff agreed to pay all disbursements on Chase Oil's behalf, including the federal royalties that were the subject of the ONRR audit. Plaintiff also agreed to provide to Chase Oil records of the disbursements. Plaintiff's claims arising from defendants' alleged failure to pay under the supposedly separate Mack Agreement are closely intertwined with plaintiff's obligations under the 1998 Agreement. Everything is part of the same business relationship, and, consequently, there is a sufficient nexus between plaintiff's Mack Agreement claims and defendant's forum-related contacts. Thus, the Court finds that Chase Oil has sufficient minimum contacts for specific personal jurisdiction in Oklahoma.

### ii. Mack Energy

Mack Energy argues that, even if the Court finds Chase Oil to have minimum contacts with Oklahoma, Mack Energy does not have minimum contacts because it is not a party to the written agreements that are at issue and Mack Energy employees were contacting plaintiff on behalf of Chase Oil. Plaintiff asserts that, although the agreements were with Chase Oil, virtually all subsequent dealings arising out of plaintiff's business relationship with Chase Oil were conducted by Mack Energy employees. Dkt. # 20-1, at 2.

Mack Energy was not a party to the Letter Agreement, 1997 Agreement, or 1998 Agreement, which form the basis for the business relationship giving rise to this suit. But plaintiff has presented evidence that Mack Energy reached out to plaintiff in Oklahoma by continuously conducting business with plaintiff throughout the nearly two-decade-long business relationship created by the written agreements. Id.; Dkt. # 20-10. Moreover, Mack Energy employees handled the ONRR audit, including requesting from plaintiff the information needed for the audit. Dkt. # 20-10. A two-decade-long business relationship with a forum resident, maintained by email and telephone communications on a nearly daily basis, is sufficient to establish minimum contacts with the forum. Additionally, there is a nexus between Mack Energy's minimum contacts and plaintiff's claims because two of plaintiff's claims arise out of Mack Energy allegedly asking plaintiff to gather information for the ONRR audit, and the other arises from one of Mack Energy's employees allegedly disclosing proprietary information related to ONRR. The factual underpinnings of all three of plaintiff's claims are part of the long standing, continuous business relationship between plaintiff and Mack Energy employees. Thus, the Court finds that Mack Energy has sufficient minimum contacts for specific personal jurisdiction in Oklahoma.

### iii. Chase

Chase argues that, even if Chase Oil and Mack Energy have minimum contacts with Oklahoma, he cannot be subject to jurisdiction in Oklahoma on the basis of their contacts with the forum. Plaintiff asserts that Mack Energy's contacts with Oklahoma may be imputed to Chase because Chase owns Mack Energy, which was not in good standing at the time the amended petition was filed. Plaintiff's argument is based on the fact that, under Oklahoma law, corporate officers are personally liable for debts incurred with their knowledge, approval, and consent during the suspension of the corporation's license to do business within the state. State Ins. Fund v. AAA Eng'g & Drafting, Inc., 863 P.2d 1218, 1221 (Okla. 1993) (emphasis added). Plaintiff's argument is misplaced for two reasons. First, there is no evidence that Mack Energy was ever licensed in Oklahoma (hence this discussion of specific personal jurisdiction). Second, the limits of personal jurisdiction are established by the Due Process Clause, which requires a defendant to have contacts with the forum state such that he could reasonably anticipate being haled into court in that state. Plaintiff has not provided any evidence that Chase has had any contact with Oklahoma. Plaintiff is conflating potential personal liability with personal jurisdiction. That Chase might be personally liable for Mack Energy's debts does not allow this Court to assert personal jurisdiction over someone with no contact with the forum. Therefore, the Court finds that Chase does not have minimum contacts with Oklahoma, and the claims against Chase will be dismissed for lack of personal jurisdiction.[3]

---

[3] Because the claims against Chase will be dismissed for lack of jurisdiction, the Court need not consider Chase's argument that plaintiff failed to state a claim against him.

### D. Fair Play and Substantial Justice

As the Court has found Chase Oil and Mack Energy have minimum contacts with Oklahoma, the Court must now "consider whether the exercise of personal jurisdiction over the defendant[s] offends 'traditional notions of fair play and substantial justice.'" OMI Holdings, 149 F.3d at 1091. The touchstone of this analysis is whether the exercise of personal jurisdiction would be "reasonable." Id. The determination of reasonableness "evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts]." Id. at 1092 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994)).

The Tenth Circuit has provided district courts five factors to consider in determining whether exercise of personal jurisdiction would offend fair play and substantial justice. The first factor is the burden on defendant of litigating in plaintiffs' chosen forum. Id. The Tenth Circuit has said that "[t]his factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." Id. at 1096 (citing World-Wide Volkswagen, 442 U.S. at 292). The second factor analyzes Oklahoma's interest in resolving the parties' dispute. OMI Holdings, 149 F.3d at 1095. Oklahoma "generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 474 (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). The third factor examines "the plaintiff's interest in receiving convenient and effective relief" in the forum state. OMI Holdings, 149 F.3d at 1095. "This factor may weigh heavily in cases where a [p]laintiff's chances of recovery will be greatly diminished by forcing him to litigate in a

another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." Id. at 1097 (citing P. Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985)). The fourth factor concerns "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," which the Tenth Circuit has stated is the examination of "whether the forum state is the most efficient place to litigate the dispute." Id. "Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." Benton, 375 F.3d at 1079 (quoting OMI Holdings, 149 F.3d at 1097). The fifth and final factor examines "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies." OMI Holdings, 149 F.3d at 1097.

### i. Chase Oil

Chase Oil entered into a sales contract with a forum resident that formed the basis for a nearly two-decade-long business relationship. Thus, Chase Oil has a heavy burden to show that exercise of jurisdiction over it would be unreasonable. Looking to the five factors for determining whether exercise of personal jurisdiction would offend fair play and substantial justice, the first factor weights against the exercise of jurisdiction. Chase Oil is certainly burdened by litigating in Oklahoma, as it conducts no business, has no offices or other property, and employs no agents in the state. See Syntroleum Corp. v. Fletcher Int'l, Ltd., No. 08-CV-384-JHP-FHM, 2008 WL 4936503, at *6 (N.D. Okla. Nov. 17, 2008). However, the burden on Chase Oil is not so great as in those cases, such as Benton, where the defendant is a foreign corporation being forced to litigate in the United States. See Benton, 375 F.3d at 1079; see also Asahi Metal, 480 U.S. at 114. The second

factor weighs in favor of exercising jurisdiction because Oklahoma has "an important interest in providing a forum in which [its] residents can seek redress for injuries cause by out-of-state actors." OMI Holdings, 149 F.3d at 1096 (citing Burger King, 471 U.S. at 483). The third factor weighs against exercising jurisdiction because there is no indication that plaintiff could not receive effective relief by bringing his suit in New Mexico. The fourth factor also weighs against exercising jurisdiction because Oklahoma is not the most efficient place to litigate this dispute. Chase Oil is a New Mexico company with no other ties to Oklahoma, and the sales agreements entered into by Chase Oil and plaintiff concerned natural gas that originated in, and plaintiff would collect from, New Mexico. Additionally, Chase Oil and plaintiff are already engaged in litigation in New Mexico. However, some of this factor's weight is mitigated by the fact that plaintiff's witnesses and evidence are located in Tulsa. Finally, the fifth factor does not weigh in either direction because the Court can discern no substantive social policy that would be affected by either the exercise or non-exercise of jurisdiction here.

The majority of the factors weigh against the exercise of jurisdiction, but those factors weigh only slightly against jurisdiction while the burden on Chase Oil to show unreasonableness is heavy. Given the long standing and continuous business relationship between plaintiff and Chase Oil, and considering the factors set out by the Tenth Circuit, exercising jurisdiction over Chase Oil in this case is reasonable. Thus, the Court finds it has specific personal jurisdiction over Chase Oil in this case.

### ii.  Mack Energy

The analysis of whether exercising jurisdiction over Mack Energy in this case would offend notions of fair play and substantial justice is very similar to the analysis for Chase Oil. For the same

16

reasons as discussed above for Chase Oil, the first, third, and fourth factors weigh against exercising jurisdiction, the second factor weighs in favor of exercising jurisdiction, and the fifth factor is not relevant. The only substantial difference is that Mack Energy has a slightly less heavy burden to show unreasonableness because it did not enter into a contract with a forum resident. On the other hand, Mack Energy still directed daily emails and phone calls to a forum resident as part of a nearly two-decade-long business relationship, so it, too, has a high threshold to show that exercising jurisdiction would be unreasonable. Considering the five factors and Mack Energy's fairly high burden to show unreasonableness, the Court finds that exercising jurisdiction over Mack Energy in this case is reasonable, and therefore, the Court has specific personal jurisdiction over Mack Energy.

### III. Colorado River Doctrine

Chase Oil and Mack Energy argue that the Court should dismiss this case under the Colorado River doctrine. Plaintiff argues that this suit is not parallel to the New Mexico suit, and, even if it were, there are no extraordinary circumstances to justify dismissal. "As a general rule, 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . .'" D.A. Osguthorpe Family P'ship v. ASC Utah, Inc., 705 F.3d 1223, 1233 (10th Cir. 2013) (quoting Colorado River, 424 U.S. at 817). However, under Colorado River, a district court may dismiss a federal suit in favor of a pending state proceeding for "reasons of wise judicial administration" such as "conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817-18. Because the federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," dismissing a case under Colorado River is appropriate only in "exceptional" circumstances. Fox v. Maulding, 16 F.3d 1079, 1081 (10th Cir. 1994) (quoting Colorado River, 424 U.S. at 817-18); see also Rienhardt v. Kelly, 164 F.3d

17

1296, 1303 (10th Cir. 1999) ("[B]ecause the Colorado River Doctrine is an exception to our jurisdictional mandate from Congress, the Doctrine may only be used when 'the clearest of justifications . . . warrant[s] dismissal.'") (quoting Colorado River, 424 U.S. at 818) (omission and alteration in original).

Determining whether a federal court may decline to exercise jurisdiction under Colorado River is a two step process. First, the court must determine whether the state and federal proceedings are parallel. Id. If the proceedings are parallel, the court then considers a number of factors the Supreme Court has set out to determine whether "exceptional circumstances" exist. Id. "Suits are parallel if substantially the same parties litigate substantially the same issues in different forums." Fox, 16 F.3d at 1081 (quoting New Beckley Mining Corp. v. Int'l Union, UMWA, 946 F.2d 1072, 1073 (4th Cir. 1991)). When determining whether proceedings are parallel, courts should not "consider how the state proceedings could have been brought, i.e., what claims and parties could have been included had the federal plaintiff made a timely application to do so." Id. Instead, courts should "examine the state proceedings as they actually exist to determine whether they are parallel to the federal proceedings." Id. It is "a serious abuse of discretion" to stay or dismiss a case under Colorado River if the state court proceedings will not completely and promptly resolve the issue between the parties. Id.

The Court may not decline jurisdiction under Colorado River because this case and the New Mexico suit are not parallel. The cases arise out of the same business relationship and largely the same facts, but resolution of the New Mexico suit may not entirely dispose of this case. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28 (1983) ("[T]he decision to invoke Colorado River necessarily contemplates that the federal court will nave nothing further to do in

18

resolving any substantive part of the case, whether it stays or dismisses."). Chase Oil brought the New Mexico suit against the New Mexico defendants, including the plaintiff in this case, alleging breach of the duty of good faith and fair dealing and requesting indemnity and an accounting. Chase Oil argues that the New Mexico defendants' failure to cooperate and provide the information necessary for Chase Oil to defend itself in the ONRR audit, and the termination of the 1998 Agreement, were without justification and contrary to the parties' agreements. The New Mexico defendants filed a counterclaim asserting breach of contract for disclosure of proprietary information and requesting indemnity. Here, plaintiff makes the same claim for breach of contract for disclosure of proprietary information as is made in the New Mexico suit, but its claims for breach of contract and unjust enrichment for failure to pay the data mining invoice are different.[4] However, the Court need not decide whether the claims are substantially the same because the parties are not substantially the same. Mack Energy is not a party to the New Mexico suit. Therefore, even if the claims here were the same as in the state proceedings, resolution of the state case might not dispose of plaintiff's claims against Mack Energy. See BNSF Ry. Co. v. Brown, 250 F.R.D. 544, 547-48 (D. Kan. 2008) (denying defendants' Colorado River argument because one of the defendants was not a party to the state court proceedings). Because this case is not parallel to the New Mexico suit, the Court will not decline jurisdiction under the Colorado River doctrine.

---

[4] Although the issue of the data mining invoice is very closely related to the claims in the New Mexico suit, and in fact may in reality be part of the equitable accounting claim, resolution of the state court proceedings may not entirely dispose of plaintiff's claims in this suit. At this stage, where Chase Oil and Mack Energy have filed motions to dismiss for lack of personal jurisdiction and not for failure to state a claim based on their assertions that there is no separate oral agreement, it is not for this Court to decide whether data mining is an issue in the New Mexico suit under the accounting provision of the 1998 Agreement.

**IT IS THEREFORE ORDERED** that defendant Mack C. Chase's motion to dismiss (Dkt. # 13) is **granted**, and all claims against Mack C. Chase are dismissed for lack of jurisdiction.

**IT IS FURTHER ORDERED** that defendant Chase Oil Corporation's motion to dismiss (Dkt. # 14) and defendant Mack Energy Corporation's motion to dismiss (Dkt. # 15) are **denied**.

**IT IS FURTHER ORDERED** that the parties shall file their Joint Status Report (see Dkt. # 25) no later than **June 13, 2017**.

**DATED** this 30th day of May, 2017.

_/s/ Claire V. Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE